NELSON P. COHEN
United States Attorney

ANDREA T. STEWARD
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: 907-271-5071
Fax: 907-271-1500

ROBERT S. ANDERSON
Environment and Natural Resources Division
United States Department of Justice
PO Box 23985
L'enfant Plaza Station
Washington, DC 20026-3985
Phone: 202-305-0321

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-cr-077-JWS |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **SENTENCING MEMO AND** |
| vs. | ) | **MOTION TO APPEAR** |
| | ) | **TELEPHONICALLY** |
| JAMES D. MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America and, by and through the

1

undersigned Attorneys, submits this Sentencing Memorandum and moves unopposed to have Robert Anderson, Senior Trial Attorney for the Department of Justice, appear telephonically at the sentencing scheduled for December 8, 2006.

# I. BACKGROUND

## A. Litigation Status

The defendant, James David Miller, pleaded guilty on April 26, 2006 to Counts Three and Seven of the Indictment in this case, as well as Count 9 regarding forfeiture of his airplane.[1]  Pursuant to plea agreement, the government has agreed to move to dismiss Counts 1, 2, 4, 5, 6 and 8.  A draft Pre-Sentence Report ("PSR") was produced to the parties on August 7, 2006, after which each party filed objections and comments.  An addendum to the PSR was produced to the parties on November 29, 2006.  The matter is now ready for sentencing.

## B.    Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant under both counts is 5 years in prison, a $250,000 fine, three years of supervised release, and a $100 mandatory special assessment.

## C.    The Sentencing Hearing

The Court has scheduled a sentencing hearing in this matter to begin at 8:30

---

[1]  Attachment A sets out the factual basis for Counts 3 and 7.

a.m. on Friday, December 8, 2006. The defendant will be represented at the
hearing by Stephanie Ames, of Criminal Defense Associates, Los Angeles,
California. The government will be represented by Assistant United States
Attorney Andrea Steward and Senior Trial Attorney Robert S. Anderson (by
telephone from Montana, if the Court agrees that this is acceptable).

The Final Pre-Sentence Report accurately describes four contested issues;
1) whether the defendant has earned a reduction for acceptance of responsibility; 2)
factual allegations surrounding several illegal hunts; 3) an enhancement for
obstruction; and 4) the defendant's role as a leader and organizer of the criminal
activity. The government also noted in its objections to the PSR that restitution to
the state for the game that was taken during the illegal conduct is appropriate. This
issue was not addressed in the PSR or the Addendum.

Counsel for the parties have agreed that a formal evidentiary hearing on
these issues is unnecessary, although the government has notified defense counsel
that it will be prepared to elicit testimony from the case agent as well as the co-
defendant, Clint Miller, if necessary to support its burden of proof in any relevant
area.

## II.  ARGUMENT

### A.    Sentencing Calculation

The Probation Office concludes, and the parties have not contested, that the Guidelines applicable to Count Three drive the overall sentencing calculation in this case.  The PSR computes the advisory Guidelines calculation for Count Three as follows:

1. Base Offense Level            6
2. Commercial Purpose         +2
3. Wildlife Market Value       +4 ($10,000–$30,000)
4. Leadership Role           +2
5. Obstruction of Justice   +2
6. Acceptance of Responsibility   +0 (*i.e.*, not applicable)
7. Total Offense Level       16
8. Criminal History Category   II  (24–30 months in Zone D)

The government supports this calculation with the exception that so long as the defendant does not contest the factual basis of the relevant conduct, the government would agree with the defendant that 2 points for acceptance of responsibility is appropriate.  This would make the total offense level 14, and the sentencing range would then be 18 to 24 months.  This will be discussed further below.

### B.    The Defendant's Position

The defendant objects to areas 3, 4, 5 and 6, above.  If the defendant's argument are accepted, the calculation would be as follows:

4

| | | |
|---|---|---|
| 1. Base Offense Level | | 6 |
| 2. Commercial Purpose | | +2 |
| 3. Wildlife Market Value | | +1  ($2,000–$5,000)[2] |
| 4. Leadership Role | | +0 |
| 5. Obstruction of Justice | +0 | |
| 6. Acceptance of Responsibility | | -2 |
| 7. Total Offense Level | | 7 |
| 8. Criminal History Category | | II  (2–8 months in Zone B) |

The government believes that the facts of this case support the calculations in the addendum to the PSR, for the reasons stated herein.

## C.    Wildlife Market Value/Relevant Conduct

Application Note 2 to U.S.S.G. § 2Q2.1 states that the "market value" under subsection (b)(3)(A) shall be based on the fair market retail price of the wildlife at issue.  The PSR computes the market value for each illegal hunt in this case by using the price paid by the hunter for the guiding services provided by the defendant.  The Ninth Circuit has approved of this calculation method and it appears to be uncontested by the defendant.  See, e.g., United States v. Atkinson, 966 F.2d 1270, 1272–75 (9th Cir. 1992).

The parties have stipulated, pursuant to the plea agreement, that the market value for the 2000 moose hunt in Count 3 is $5,000.  Additionally, the defendant also illegally provided services of guiding/hunting/transporting big game hunters

---

[2]In his objections, the defendant incorrectly asserts that a wildlife market value of $2,000–$5,000 results in no increase.  A one level increase, however, is required by U.S.S.G. § 2.1(b)(3)(A)(i).

5

in 1999 and 2001, for a total market value of approximately $20,500, plus several

thousands of dollars in tips.[3]   The 1999 and 2001 hunts are relevant to the instant

offense in that these were the same illegal hunting services provided in three

consecutive hunting seasons.

The guidelines provide that specific offense characteristics are to be

determined by the inclusion of relevant conduct even if there is not a conviction for

that conduct so long as the conduct would be the type to be 'grouped' if there had

been a conviction on separate counts.  U.S.S.G. §§ 1B1.3(a)(2) & App. n.3;

3D1.2(d).  Counts are to be grouped when the offense level is determined largely

on the basis of the total amount of harm or loss, or if the offense behavior is

ongoing or continuous in nature and the offense guideline is written to cover such

behavior.  The offense of the defendants conviction covered by Section 2Q2.1 is

specifically included as an offense that should be grouped.  U.S.S.G. § 3D1.2(d).

Hunts illegally guided by the defendant in 1999 and 2001 are thus relevant

conduct such that the market value of those hunts should be included in the

guidelines calculation.  Defense counsel for the defendant has represented to the

government the defendant's intention to withdraw the objections to the 1999 and

2001 hunts but continue to maintain that since this relevant conduct was not

---

[3]  See Attachment B for the factual basis for these hunts.

included for his son, Clint Miller, it should not be counted as relevant conduct for him.  This issue is addressed below regarding sentencing disparities.

In sum, the total market value of the illegally guided hunts in 1999, 2000, and 2001, not including tips, was $20,500.  This amount is well in excess of the $10,000 floor that provides a 4 point enhancement in the table at § 2B1.1—as referred to by § 2Q2.1—to determine the enhancement for market value.

### D.    <u>Leadership Role</u>

Section 3B1.1 provides for a 2 level increase if the defendant is an organizer, leader, manager, or supervisor in any criminal activity involving two or more "criminal participants."  The illegal conduct in this case involved two "criminal participants" as that term is defined in Application Note 1 to U.S.S.G. § 3B1; Jim Miller and his son, Clint Miller.   Clint was a minor participant in the conduct at issue, a fact reflected both in his Plea Agreement and this Court's calculation of his sentence.

The Guidelines direct us to consider the following factors when determining whether a leadership enhancement is appropriate:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.2, App. n.4.

All of these factors apply to Jim Miller. He solicited, contracted, and carried out the illegally guided hunts. He arranged for and provided the transportation to the site, he determined the location where the hunters would be dropped, he provided equipment for the hunters, and in some cases arranged for assistants—including his son—to set up camp in advance, cook for the hunters, lead them to game, and help pack the meat to the camp. The defendant did this over the course of three hunting seasons without the required licenses; indeed all of his hunting privileges were suspended during this period as a result of his prior hunting violations. Defendant's objection statement that Clint's role as a cook and guiding on the ground were "just as necessary as that of James Miller in flying" ignores most of the defendant's conduct. The defendant clearly qualifies for the two-level leadership enhancement suggested in the PSR.

### E.    Obstruction Of Justice

The defendant objected to an enhancement for obstruction of justice but did not provide a basis for such an objection. Section 3C1.1 provides for a two-level enhancement where the defendant willfully obstructed or impeded—or attempted to do so—the course of the investigation, prosecution or sentencing of the offense and the obstructive conduct is related to the offense of conviction and any relevant

conduct.  Throughout the course of the investigation of this case the defendant

obstructed and impeded law enforcement in the administration of justice.  This

conduct included attempting in 2002 to get a false invoice for the walrus tusks and

making a false statement to a U.S. Fish and Wildlife biologist, to make it look like

the walrus tusks were properly registered, as alleged in Count 7.  Then, in 2004,

during the course of the investigation of the defendant's illegal hunting services,

the defendant became aware that a search warrant was to be conducted on his

residence and he removed several wildlife items from his residence.  These items

were listed in the search warrant to be seized.  Finally, in 2005 the defendant

dismantled his airplane following his indictment by the grand jury, which included

a forfeiture provision for the airplane.

### 1.    Obstruction of the Investigation:  Illegal Walrus Tusks

The investigation of the defendant was initiated in May 2002 when U.S. Fish

and Wildlife inspectors were advised by the airline that there was a shipment of

wildlife parts, including several walrus tusks, at the airport in Seattle that were

shipped by the defendant from Alaska.  There were several wildlife items in the

shipment that were not properly tagged or registered as required by law.  The

shipment was sent back to the defendant in Alaska to account for the items that

were not properly registered.  After the defendant was contacted by law

enforcement about the shipment, the defendant attempted to solicit an invoice from a taxidermist, Sean Hardesty, to make it appear that the walrus tusks were harvested on a recent date so that the requirement to register them had not yet been triggered. The defendant promised Hardesty a flight anywhere he wanted to go if he complied. Hardesty said he would think about it and get back to the defendant. The defendant then went to a U.S. Fish and Wildlife biologist and lied regarding the date on which he had collected the tusks to get the tusks registered within the required time frame as alleged in Count 7. The defendant went back to Hardesty and told him he no longer needed the false invoice.

## 2.    Obstruction of Search Warrant

A search warrant was executed on the defendant's residence on August 5, 2004. Days prior to the search, a U.S. Fish and Wildlife Special Agent, Steve Magone, had driven by the defendant's residence to get a particular description of the place to be searched. The defendant saw the Agent and became suspicious that he was being investigated. According to the defendant's son, Clint Miller, the defendant then removed from his residence approximately 28 walrus tusks, some of which were not properly registered or registered illegally. He also removed one large brown bear rug and two dall sheep mounts that had all been taken illegally as well as other miscellaneous wildlife items. These items were listed in the search

warrant as items to be seized. These items were subsequently located and seized after Clint Miller provided information that led to their discovery in 2005.

### 3.    Obstruction of Forfeiture of Airplane

The Indictment of the defendant, which includes a forfeiture count for Piper Super Cub registration number N9156P, was returned on August 18, 2006. The government contacted the office of the defendant's attorney, Burke Wonnell, and provided the information that the Indictment had been returned and that the plane was subject to forfeiture on August 19, 2006. The defendant was aware that he was to be indicted prior to the return of the Indictment. The weekend following the return of the Indictment, the defendant discussed with his son, Clint Miller, the Indictment and the forfeiture count and whether the defendant should hide the airplane.

On August 25, 2006, the defendant made arrangements to have the plane removed from a dock on a river in Idaho to a private hanger where it was disassembled. During the disassembly the floats were removed and, together with the tundra tires, sold two months later for approximately $10,300. During the week of August 29, 2006, the government was in negotiations with defense counsel to get the defendant to turn the plane over. On September 7, 2006, the government sought and received a restraining order to preserve the plane for forfeiture. The

restraining order directed the defendant to turn over the plane to the government in

Alaska, but was later modified to require the defendant to turn it over in Spokane,

Washington.

On September 26, 2006, there was a hearing to determine the defendant's

compliance with the restraining order.  At that hearing the Court directed the

defendant to deliver the plane in Spokane and provide a list of aircraft components

removed since August 1, 2006, and a list of names of persons who removed them.

These lists were never provided to the government.

In sum, these are the types of obstructive conduct that Application Note 4 to

U.S.S.G. § 3C1.1 provides as examples of obstructive conduct.  These include,

*inter alia*, 1) producing or attempting to produce a false or counterfeit document or

record during an official investigation, App. n. 4(c); 2) destroying or concealing

evidence that is material to an official investigation, App. n.4(d); and 3) failing to

comply with a restraining order issued pursuant to 21 U.S.C. § 853(e), App. n.4(j).

**F.    <u>Acceptance</u>**

The Plea Agreement provides, in Section III, Part B, that the government

will recommend a reduction for acceptance of responsibility if the defendant

clearly demonstrates such acceptance and does not otherwise fail to meet the

Guidelines criteria or act in a manner inconsistent with such acceptance.  This may

12

be the type of "extraordinary" case described in Application Note 4 to USSG §

3E1.1, in which a defendant's "initial obstructive conduct was not inconsistent

with his subsequent acceptance of responsibility." <u>United States v. Hopper</u>, 27

Fed.3d 378, 383 (9th Cir. 1994). The defendant's guilty plea was timely, and he

did pay to have his plane re-assembled to be turned over to the government and has

agreed to forfeit the plane. The defendant has not, however, earned the additional

third point for acceptance of responsibility in that he did not assist authorities in

the investigation or prosecution of his own misconduct, but rather undertook

obstructive conduct to impede the investigation.

It is possible, however, that if the defendant contests the factual basis for the

relevant conduct, and the court determines that the relevant conduct occurred, he

will not be eligible for even the two-level decrease for acceptance of responsibility.

<u>See</u> U.S.S.G. § 3E1.1, App. Note 1(a). At this time, his attorney has indicated his

intention not to contest the factual basis of the relevant conduct.

### G.    <u>Statutory Sentencing Factors</u>

In addition to the Guidelines, the following sentencing factors set forth in 18

U.S.C. § 3553(a) apply: (1) the nature and circumstances of the offense and

history and characteristics of the defendant; (2) the need for the sentence to reflect

the seriousness of the offense, afford deterrence, protect the public from further

crimes and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established Guidelines sentencing ranges; (5) any pertinent Guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense.  18 U.S.C. § 3553(a)(1) through (7).  Each sentencing factor is addressed in turn:

1.    **<u>Nature and Circumstances of Offense and the History and Characteristics of the Defendant</u>**

The nature and circumstances of the defendant's offense and the defendant's history and characteristics support imposition of the sentence recommended herein.  The nature and circumstances of the offense, as well as the criminal history and characteristics of the defendant are detailed in the Plea Agreement, in the discussion above, and in the PSR.  In sum, the defendant has exhibited a persistent and flagrant disregard for the laws that govern the exercise of the privilege to take wild animals over the course of two decades.

The defendant has also displayed a startling ease with deception throughout the investigation of this case.  He attempted to get a taxidermist to create a false document for him, he lied on several occasions to federal authorities, he hid items to prevent their seizure during a search warrant, and he attempted to hide his plane when he knew it was likely to be forfeited.  The defendant consistently obstructed

the investigation of this case.

The worst of his conduct, however, is to involve his son in the illegal activities he undertook.  Not only has the defendant provided a horrible example to his son as a hunter, he has involved his son Clint Miller in illegal conduct for which his son is now serving a term of probation and home confinement.  The defendant has involved his son in illegal wildlife activities since Clint was just 13 years old.  The defendant has been carried out criminal violations of wildlife law for two decades and has encouraged his son to do the same.

**2.     <u>Need for the Sentence to Reflect the Seriousness of the Offense, Afford Deterrence, Protect the Public, and Rehabilitate the Defendant</u>**

The need to appropriately reflect the seriousness of the defendant's offense, afford appropriate deterrence, protect the public, and afford the defendant appropriate rehabilitation similarly dictate that a sentence of 18 months incarceration, three years supervised release, a $6,000 fine, suspension of hunting privileges, restitution and forfeiture of the defendant's aircraft and other property is appropriate.

The defendant has been un-deterred by his previous wildlife convictions and hunting bans that resulted from his prior abuses of public resources.  He has three prior convictions for hunting violations, including waste of big game meat and the

15

illegal transportation/possession of game.  The defendant was banned from getting a hunting license for a total of twelve years as a result.  The conduct in this case occurred while he was prohibited from hunting.  The defendant is a recidivist that has yet to be deterred by a twelve-year hunting ban, fines totaling $5,500, and jail time of a total of 217 days (most of those days, however, were suspended).

The recommended sentence will reflect the seriousness of the offense. Hunting, and providing services related to hunting, are privileges bestowed by the state that require individuals to follow specific requirements in relation to using a public resource.  Part of the reason to require licensing is to ensure that the individuals who exercise the privilege do so within the confines of the law.  The defendant has proven over and over again that, not only is he not able to honor that privilege, he behaves in flagrant disregard of the requirements that others follow so carefully.

The nature of the defendant's criminal acts and the remote location where they took place make this kind of crime difficult to detect, particularly where the defendant is obstructing the investigation in so many ways and the participants are out of state hunters making it difficult to investigate such a case.  The sentence recommended here will deter the defendant, as well as the public, from committing similar crimes.

16

### 3.    <u>Kinds of Sentences Available</u>

Eighteen months incarceration is the sentence most appropriate for this defendant to curb his recidivism and deter him and the public from this type of conduct.

### 4.    <u>Sentencing Ranges Available</u>

The United States' position with regard to an appropriate Guidelines sentence is detailed above.

### 5.    <u>Pertinent Policy Statements</u>

The United States is unaware of any pertinent policy statements.

### 6.    <u>Need to Avoid Sentence Disparity</u>

The defendant has asserted that the sentence disparity between his son and the recommended sentence here is unfair.   The defendant's son, Clint Miller, pled guilty to a misdemeanor Lacey Act violation for the same 2000 hunt to which the defendant has plead guilty to a felony in Count 3.  Clint Miller was sentenced to 3 years probation, with two months home confinement.  Clint Miller's conduct is in no way equivalent to that of his father.  The defendant was in a position of trust and responsibility as a parent and he abused that position by involving his son in illegal conduct.

There are several basis that justify a substantial disparity in father and son's

sentences.  Clint Miller has cooperated with this investigation fully and timely in

contrast to his father's obstructive conduct.  Clint's culpability was much less; he

was not banned from hunting during the period of illegal activities; and he was not

telling hunters to say that they were 'just friends.'  Moreover, it was the defendant

that solicited, contracted, organized, selected the location for the hunt, and

equipped the hunters, while also providing the hunters with his son to provide

services while in the hunt camp such as cooking for the hunters and packing and

skinning their game.  Clint was merely doing his father's bidding.

The defendant also involved another young man, Chris Beeman, in these

activities during the 1999 hunt.  Neither Chris Beeman or Clint Miller were

charged with the 1999 hunt because the statute of limitations had tolled for them

prior to the indictment of this case.   Clint was not involved in the 2001 hunt

because after the fight with the hunters over payment and showing up late, the

defendant told Clint not to assist them in camp.

For all of these reasons, the disparity in sentences between father and son are

well justified.

## 7.   Restitution

The defendant should be required to pay the State of Alaska for the game

taken as a result of his illegal activities.  The government noted in its objection to

18

the PSR that restitution should be included in the defendant's sentence for the game taken as the result of the defendant's illegal conduct. This issue was not discussed in the addendum to the PSR.

The Sentencing Guidelines provide that where restitution is not specifically authorized by statute the court may impose restitution as a condition of supervised release based on the following criteria: 1) the amount of the loss sustained by the victim; and 2) the financial resources of the defendant. U.S.S.G. § 5E1.1(a)(2) citing 18 U.S.C. § 3663(a)(1)(B)(I). Where property damage is incurred by a victim the court may require the defendant to pay an amount equal to the value of the property. Id. § 3663(b)(1)(B).

Alaska Statute 16.05.925 specifically provides for restitution—and the restitution value—for game taken in violation of AS 16.05.920, which prohibits the taking, possessing, transporting, selling, purchasing, of fish and game unless otherwise permitted. This case was jointly investigated with the Alaska State Troopers and the U.S. Fish and Wildlife Service. From 1996 to 2004 the defendant was involved with illegal wildlife practices that resulted in $25,150 worth of loss to the state in wildlife. See table PSR p. 9. At a minimum, the defendant should be required as a condition of supervised release to pay restitution for the game taken during the course of his illegal big game hunting enterprise from 1999 to

19

2001.  That would include the following: 1) 1999 hunt; 8 caribou at $850 for each;

2) 2000 hunt; 2 moose at $1,000 each; and 3) 2001 hunt; 1 moose and 1 caribou for

a total of $1,850.  The total restitution amount for the three hunting seasons would

be $10,650.

### H.  Other Issues

The Sentencing Recommendation provided to the Court fails to mention the

parties' agreement that the defendant will forfeit and abandon to the government

his right, title and interest in the following items:

1. Piper PA-18 Super Cub aircraft, registration number N9156P (presently in the government's possession);
2. Browning bolt action rifle, .300 win-mag model a-bolt stainless synthetic stalker, serial number 39 318 MM351 (presently in the government's possession) ;
3. The hides and skulls of two brown bears seized by the U. S. Fish and Wildlife Service in May 2002 and January 2006 (presently in the government's possession);
4. Two Dall Sheep shoulder mounts seized by the U.S. Fish and Wildlife Service in January 2006 (presently in the government's possession);
5. Walrus parts and tusks seized by the U.S. Fish and Wildlife Service in May 2002 and January 2006 (presently in the government's possession); and
6. Three walrus tusks bearing US Fish and Wildlife Service tag numbers N007814, N007829 and N007841, to be turned over to the government by the defendant prior to sentencing;

See Plea Agreement, pp. 17–18.

The government respectfully requests that the Court give effect to this

provision of the Plea Agreement by noting,  on the record during the hearing and in

the Judgment and Commitment Order, that the defendant is required to comply

with this term of the Agreement.

### III.  CONCLUSION AND SENTENCING RECOMMENDATION

There are two main reasons why a sentence of substantial incarceration is

appropriate in this case.  First, James David Miller's violation record and conduct

in this case reveal him to be a man who believes the game and guiding laws of

Alaska do not apply to him.  Despite being twice convicted of wasting the meat of

big game animals in the late 1980s, the defendant continued to hunt illegally and

earn money by illegally providing hunting services to paying clients on big game

hunts in Alaska.

During these hunts, and in his own hunting, the defendant  has violated a

host of Alaska laws pertaining to licenses, seasons and fair chase.  His altercations

with clients indicate that he treats them as poorly as he does the wildlife of this

state.  The defendant lies whenever it suits him.  When caught shipping out

untagged walrus parts, he lied to a government official to obtain tags and tried to

persuade a shipping agent to lie to investigators to cover the crime.   The defendant

fraudulently listed a friend as the owner of his airplane, likely to avoid

investigation or seizure of the aircraft if he was apprehended.  Finally, and perhaps

worst of all, the defendant abdicated his responsibilities as a father by involving his son Clint in his illegal conduct.

Second, the illegal killing and commercialization of Alaska wildlife resources occur in remote, scarcely patrolled areas of this vast state. Deterrence of big-game guiding and hunting crimes arises not from the fear of surveillance or apprehension by officers in the field, but by the fear that conviction will result in more than a slap on the wrist. The government has negotiated a plea agreement in this case that provides for the loss of the defendant's plane, all his illegal wildlife and the possibility of a substantial term of incarceration. For all the reasons set forth above, the government respectfully makes the following sentencing recommendation:

(1)   **18 months incarceration**

(2)   **3 years supervised release with the following conditions: 1) a prohibition on hunting and trapping as well as a prohibition on accompanying anyone hunting or trapping, anywhere in the United States; and 3) a prohibition on guiding or outfitting hunters or anglers, or assisting in the guiding of hunters or anglers anywhere in the United States.**

(3)   **A fine of $6,000**

(4)   **Restitution of $10,650 paid to the state of Alaska**

(5)   **Forfeiture of the following:**

      1.   **Piper PA-18 Super Cub aircraft, registration number**

**N9156P (presently in the government's possession);**

2. **Browning bolt action rifle, .300 win-mag model a-bolt stainless synthetic stalker, serial number 39 318 MM351 (presently in the government's possession) ;**

3. **The hides and skulls of two brown bears seized by the U. S. Fish and Wildlife Service in May 2002 and January 2006 (presently in the government's possession);**

4. **Two Dall Sheep shoulder mounts seized by the U.S. Fish and Wildlife Service in January 2006 (presently in the government's possession);**

5. **Walrus parts and tusks seized by the U.S. Fish and Wildlife Service in May 2002 and January 2006 (presently in the government's possession); and**

6. **Three walrus tusks bearing US Fish and Wildlife Service tag numbers N007814, N007829 and N007841, to be turned over to the government by the defendant prior to sentencing;**

**(6)    Special Assessment of $200**

Importantly, the United States' sentencing recommendation of 18 months incarceration is explicitly conditioned on the defendant's acceptance of responsibility for his criminal conduct.

For the reasons set out above, the government believes the above recommended sentence is fully justified.

The government hereby moves unopposed to have Senior Trial Attorney Robert Anderson to appear telephonically at the sentencing hearing scheduled for December 8, 2006.

RESPECTFULLY SUBMITTED this 1st day of December, 2006, at Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

 s/Andrea Steward
Assistant U.S. Attorney
Robert Anderson, Senior Trial Attorney, DOJ

**Certificate of Service**
I declare under penalty of perjury that a true and correct
copy of the foregoing was served via electronic filing on:

Stephanie Ames
Mark Rosenbaum

on December 1, 2006:

 s/Andrea Steward
Office of the U.S. Attorney