**STEPHANIE AMES (# 195608)**
**CRIMINAL DEFENSE ASSOCIATES**
**Attorney for Defendant James Miller**
**20700 Ventura Boulevard, Suite 301**
**Woodland Hills, CA 91364**
**Telephone: (818) 313-6870**
**Facsimile:    (818) 313-6871**
**Stephanie.ames@emailcda.com**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  3:06cr0077-01(JWS) |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANT'S POSITION** |
| vs. ) | **WITH RESPECT TO** |
| ) | **SENTENCING FACTORS** |
| JAMES DAVID MILLER, ) | |
| ) | Judge:  John W. Sedwick |
| ) | |
| Defendant. ) | |
| ) | |

DEFENDANT TO THE ABOVE-ENTITLED ACTION, hereby submits the following position with respect to sentencing factors.

**Acceptance of responsibility:**

The court should grant acceptance of responsibility in this case.  Section 3E1.1 states in relevant part that "(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels."  U.S.S.G. § 3E1.1(a).  Defendant has complied with the provisions of §3E1.1(a) and therefore should be granted the appropriate two level reduction.  The pre-sentence report excludes this reduction based upon the enhancement

for obstruction of justice. However, in this case the Court should still grant a two level reduction for acceptance of responsibility even if it applies a two level increase for obstruction of justice. Section 3E1.1 application note 4 states that conduct resulting in an enhancement under §3C1.1 **ordinarily indicates** that the defendant has not accepted responsibility. Application note 5 recognizes that the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference.

When looking at the totality of circumstances, this case is different from the ordinary case involving obstruction where acceptance is not granted. In this case the Government recognizes and is willing to grant the Defendant with the two level reduction for acceptance of responsibility. Accordingly, this is one factor that the Court should consider in deciding that even if Defendant initially obstructed the investigation, he subsequently has appropriately and fully accepted responsibility. Further, the facts supporting the enhancement of obstruction occurred prior to the filing of the indictment in this case. (The pre-sentence report does allege facts relating to the surrender of the airplane that it considers as obstruction. However, Defendant did voluntarily forfeit the airplane as required and the Court should not consider those allegations as obstruction.)

The defendant subsequently voluntarily forfeited items requested by the government, including: the Piper PA-18 Super Cub aircraft, registration number N9156P; Browning bolt action rifle, .300 win-map model a-bolt stainless synthetic stalker, serial number 39318MM351; the hides and skulls of two brown bears seized by the U.S. Fish and Wildlife Service in May 2002 and January 2006; two dall sheep shoulder mounts seized by the U.S. Fish and Wildlife Service in January 2006; walrus parts and tusks

seized by the U.S. Fish and Wildlife Service in May 2002 and January 2006; three walrus tusks bearing US Fish and Wildlife Service tag numbers N007814, N007829 and N007841.  Defendant's voluntary forfeiture of all of these items significantly assisted the Government in not having to pursue formal forfeiture action and showed Defendant's good faith efforts and acceptance of criminal responsibility.

Defendant entered a voluntary plea of guilty prior to the commencement of trial and admitted the conduct comprising the offense of conviction.  Defendant voluntarily surrendered to authorities promptly and has complied with all terms of pre-trial release since the arraignment and has continued to comply with those conditions for well over a year while this case has been pending.

Finally, the Defendant has made post-offense rehabilitative efforts in leaving the type of work which is related to the criminal charges and finding other lawful employment.

**Aggravating role in the offense:**

Defendant objects to a two level increase pursuant to §3B1.1(C) for an organizer, leader, manager, or supervisor.  For an increase under §3B1.1 to be appropriate, there must be evidence to support a finding that the Defendant occupied one of the four specified roles, not merely that the Defendant was more culpable than others who participated in the crime. *See United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir. 1994); *United States v. Hoac,* 990 F.2d 1099, 1111 (9th Cir.1993), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994). The specific roles are identified as organizer, leader, manager, or supervisor.  Moreover, to sustain a finding that a defendant in fact played one of the four specified roles, there must be evidence that the defendant

"exercised some control over others involved in commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Mares-Molina,* 913 F.2d 770, 773 (9th Cir.1990). In this case there were two individuals involved. Pursuant to Commentary note 4 "[f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. The government must show by a preponderance of the evidence that defendant was an organizer, manager etc. *See United States v. Wilson,* 900 F.2d 1350, 1354 (9th Cir.1990) (circumstances justifying upward departure must be proven by preponderance of the evidence).

In this case each co-defendant was necessary to the operation. The activities of Clint Miller in guiding, cooking, skinning and packing animals were just as necessary as that of James Miller in flying. Further, given that this activity only required and consisted of the two parties, the distinction between their relative culpability has already been addressed by the co-defendant receiving a reduction for minor participant. Accordingly, Defendant should not also receive an enhancement for aggravating role which then establishes a large disparity between the two necessary parties to the criminal conduct.

**Relevant conduct:**

The need to avoid unwarranted sentencing disparities among co-defendants involved in the same criminal activity has long been considered a legitimate sentencing

concern. *United States v. Capriola,* 537 F.2d 319, 320-21 (9th Cir.1976). Disparity was said to be one of the most important evils the guidelines were intended to cure.

In the case of co-defendant Clint Miller, probation prepared a pre-sentence report which counsel for Defendant James Miller can only assume did not contain the relevant conduct which it has included for James Miller even though such "relevant conduct" is just as applicable to Clint Miller as it is to James Miller. The basis for such assumption is that the written plea agreement neglects to include relevant conduct and the sentencing recommendations conform to the plea agreement and in fact recommends a lower sentence than was originally included in the plea. Accordingly, such "relevant conduct" should not be applied to one co-defendant when it is not applied to the other.

The co-defendant Clint Miller was given a total offense level of 4 with a criminal history category III, sentencing him to probation with two months home confinement. Although counsel for defendant James Miller does not have access to the pre-sentence report and therefore lacks access to the calculation of defendant Clint Miller's offense points, it would appear that he was given a base offense level of 6 pursuant to §2Q2.1 with two points increased for commercial purpose pursuant to §2Q2.1(b)(2) with reductions for acceptance of responsibility and minor role pursuant to §3B1.9(b). The plea agreement for co-defendant Clint Miller actually also included a two level increase for wildlife value of $5,000-$10,000 for a total offense level of 6. However, the final offense level applied was that of 4 so counsel assumes that this additional increase was not applied, given that the government did not advocate any downward departure. (*See attached judgment for Clint Miller).*

Each of the instances which have been included in Defendant James Miller's increase for relevant conduct also involved the conduct of co-defendant Clint Miller. However, he was not given any increase for this activity. Clint Miller's activities were as necessary to the hunting trips as that of James Miller. As noted in the government's sentencing memorandum for Clint Miller, the defendant assisted his father James Miller in guiding and outfitting out-of state hunters in Alaska, by providing equipment (tents, food and other camping gear) and assistance (directing the hunters to game, skinning and packing of wildlife, cooking) to the hunters.

In the plea agreement for Defendant James Miller, the parties agree that the market value of wildlife involved in count 3 is between $2,000 and $5,000.00. This is the same amount that was attributed to the co-defendant. If the Court acknowledges this as the appropriate sum then the sentence is consistent with the judgment given to the co-defendant as it relates to relevant conduct and total market value of wildlife. Otherwise conduct which was relevant under the guidelines to both defendants is only applied to one and Defendant James Miller's guideline calculation is grossly disproportionate to that of the co-defendant who was charged with same criminal activity but to whom relevant conduct for market value of all animals taken was not attributed. Accordingly, Defendant James Miller respectfully requests that this Court not apply the four level enhancement for relevant conduct in this case.

**Downward departures**

A downward departure is appropriate where "the court finds that there exists ⋯ [a] mitigating circumstance of a kind, or to a degree, not adequately taken into consideration

by the Sentencing Commission in formulating the guidelines…." 18 U.S.C. § 3553(b) (West Supp.1990).

If the Court still applies the four level enhancement for relevant conduct it should make an equal downward departure based upon disparity in sentences received by co-defendants in the same case.

The Ninth Circuit has recognized that, in the appropriate circumstances, a departure may be warranted when there is a disparity of sentences between similarly situated individuals.  See *United States v. Tzoc-Sierra*, 387 F.3d 978 (9th Cir. 2004), *United States v. Caperna*, 251 F.3d 827 (9th Cir. 2001), and *United States v. Dass*, 198 F.3d 1167 (9th Cir. 1999).  These and similar cases make clear that a downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances.  In the instant case such a departure is appropriate for the same reasons listed above in objection to the four level enhancement for relevant conduct.  All of the relevant conduct attributed to Defendant James Miller also involved the activities of Defendant Clint Miller.  However, such relevant conduct was not properly attributed to Defendant Clint Miller.  Given that the conduct was not so attributed to him, if the Court determines that such relevant conduct should be attributed, it should then make a proportionate downward departure to equalize the position of each defendant involved.

Additionally, based on *Booker*, the Court may consider previously prohibited grounds for departure and/or mitigation.  In this sentencing framework, the Court is respectfully asked to consider Mr. Miller's current and future employment, family, need to provide support and income to dependents, and community support in fashioning a sentence guided by the now-advisory guidelines that would permit a sentence enough to

thoroughly impress upon the Defendant the enormous error in judgment he has made, but lenient enough to permit him to get on with his life, support his family and maintain employment. Such as sentence could include a split sentence to reflect the appropriateness of imposing a sentence other than imprisonment where, as here, the defendant is a first offender who has not been convicted of a crime of violence. Accordingly, Defendant requests that the Court consider a sentence that places him within zones A through C.

**18 U.S.C. 3553 sentencing factors**

A sentencing factor pursuant to 18 U.S.C. § 3553(a) is: the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes. For the reasons previously argued Defendant respectfully requests that this Court not include the four level total offense increase based upon this sentencing factor consideration as well as pursuant to the bases previously stated.

If this Court believes that Defendant should be given the two level enhancements for obstruction of justice and aggravating role in the offense then the Defendant would request the Court consider the following possible sentence in order to properly attribute relative fault while recognizing the need for a meaningful yet sensitive sentence to the total facts and circumstances of this defendant and this case. Even if this Court should apply to defendant's offense level two points for obstruction and two points for manager his total offense level should be 12 minus two for acceptance of responsibility. This would place defendant at a total offense level of 10 with a criminal history category of II placing him at a guideline range of 8-14 months. With a split sentence at the low end of the guidelines the Defendant would be eligible for a sentence of imprisonment of 4

months with the remaining time with community placement or home confinement.  Such a sentence would still impose some prison time addressing the seriousness of Defendant's offense, affording appropriate deterrence, and protecting the public while enabling the defendant to still have a legitimate opportunity for employment after release and thereby affording appropriate rehabilitation.

A sentence of two years as recommended in the presentence report provides a sentence far above that given to the co-defendant and is excessive given the nature of the offense and importantly will likely foreclose Defendant from any future employment related to his education and experience.  The employers he is currently working with would have to find a new provider for work and would therefore not likely have work opportunities available for Mr. Miller once he was released from custody.  He would be unable to care for his dependants and rehabilitative efforts would be non-existent in this case.  Giving Defendant Miller such a far more serious sentence that that of his co-defendant would not be equitable or just given the facts of this case, the circumstances of the co-defendant's plea and stipulated sentence, and the nature of the offense.

In balancing the need for proper punishment for criminal behavior with that of allowing for rehabilitation and future productive activity, as well as the need to maintain or obtain employment and a means for family support, a split sentence as that provided for in a sentence of 4 months incarceration with alternative community placement would strike the proper balance.  Further, it would still acknowledge Mr. James Miller's greater culpability and pre-plea behavior by applying the enhancements given under the sentencing guidelines for obstruction and aggravating role while maintaining a sentencing

structure similar to that of the co-defendant as well as properly considering the seriousness of the offense and all relating facts and circumstances.

For the reasons set forth above, the defendant respectfully requests that the Court consider a sentence that places Defendant within zones A through C and that the Court sentence him at the most to no more than 8 months with a split sentence of four months imprisonment and four months community placement or home confinement which would allow him to maintain employment.

DATED this 4th Day of December, 2006.

By: __/s/ Stephanie Ames_____
Stephanie Ames, Esq.
Criminal Defense Associates
20700 Ventura Blvd.,Suite 301
Woodland Hills, CA  91364
Telephone: (818) 313-6870
Facsimile:  (818) 313-6871
Email:  stephanie.ames@emailcda.com